UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

AUBREY BRIAN REDDING,

                    Plaintiff,

                                                    **Hon. Hugh B. Scott**

              v.                                    **16CV848V**

                                                    **Report
                                                    and
                                                    Recommendation**

NANCY A. BERRYHILL[1], Acting
Commissioner of Social Security,

                    Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings

(Docket Nos. 9 (plaintiff), 11 (defendant Commissioner)).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination

of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled

to disability insurance benefits and/or Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

The plaintiff ("Aubrey Redding" or "plaintiff") filed an application for disability

insurance benefits on January 8, 2013.   That application was denied initially.   The plaintiff

appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and

---

[1]Nancy A. Berryhill is now the Acting Commissioner of Social Security.   Pursuant to Federal Rule of Civil Procedure 25(d)(1), Ms. Berryhill is substituted for former Acting Commissioner Carolyn W. Colvin as Defendant in this action; no further action is required, 42 U.S.C. § 405(g).

concluded, in a written decision dated April 22, 2015, that the plaintiff was not disabled within the meaning of the Social Security Act.    The ALJ's decision became the final decision of the Commissioner on August 26, 2016, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on October 24, 2016 (Docket No. 1).    The parties moved for judgment on the pleadings (Docket Nos. 9, 11).    The motions were deemed submitted on August 8, 2017, when plaintiff filed his Reply (see Docket No. 12).

## FACTUAL BACKGROUND[2]

Plaintiff was born on October 1, 1993 (R. 21).    He could have been considered an infant at the time of the originally claimed onset date but plaintiff applied as an adult (R. 40), amending the onset date for his eighteenth birthday, October 1, 2011 (R. 39; see Docket No. 9, Pl. Memo. at 1 n.2).    He was classified as learning disabled while in school, and graduated with a local diploma (R. 24, 345, 358, 387).    He was an infant plaintiff engaged in substantial gainful activity, working at McDonald's from June 2011 to December 2013 (R. 21, 24-25, 288).    There was a continuous twelve-month period during which plaintiff did not engage in substantial gainful activity (R. 22).    McDonald's fired Redding twice, first in May 2013 for excessive call-ins; second, after McDonald's reinstated plaintiff, he was fired for fighting coworkers in December 2013 (R. 25, 479).

Plaintiff's claimed impairments are mild intellectual disability (R. 22, 24, 391).    He has attention deficit hyperactivity disorder ("ADHD") (R. 22), but plaintiff was not taking

---

[2]References noted as "(R.__)" are to the certified record of the administrative proceedings, filed with this Court as Docket No. 7.

medication for this condition and the ALJ did not see required symptoms between October 2011 and April 2015 (R. 22).   His primary care physician noted that plaintiff could take Concerta for his disorder but plaintiff refused to do so thinking he did not need it for his job and claiming that it did not work consistently (R. 22, 369, 377-78, 379, 400).   His doctor later noted that plaintiff has taken Concerta and was doing well on it, enabling him to focus (R. 400).   Months after losing his job at McDonald's, plaintiff was not taking Concerta and his mother urged him to resume taking it so that he could attend to household chores (R. 420-21, 25).   The doctor, however, did not attribute plaintiff's inaction to his ADHD (R. 420), not prescribing Concerta since plaintiff did not "have a task on which he needs to concentrate" (R. 421).

Plaintiff's mother testified at the hearing that plaintiff was physically and verbally abusive to her, he was destructive, and he threw golf clubs and a screwdriver at her (R. 27, 57-58).   She stated that she had to beg plaintiff to bathe, that he would go weeks without taking a bath, he wore the same dirty clothes constantly, and he had issues with his personal hygiene (R. 27, 59).   She also testified that plaintiff was in counseling and that it was helping with his behavior problems (R. 27, 60).   Plaintiff would soil his clothes (R. 57, 58).   She stated that plaintiff was disorganized and dysfunctional, with the capability of tearing a room down (for example) hiding food in closets, destroying rooms (R. 57, 58).   She said that plaintiff had and lost two jobs because of his behavior, his attitude, and not getting along with people and fighting (R. 59-60).   She said that plaintiff was not able to count money (R. 61) and he did not work as a cashier at McDonald's (R. 63); plaintiff stated that if at the register he could not count fast like others (R. 41).   The transcript of this hearing (R. 36-67), however, is missing pages 19 and 21, which was part of the mother's testimony.

Plaintiff testified that he did work at a store for two weeks before being fired for restocking merchandise on shelves too tightly, he disclaimed that he had any problems with coworkers (R. 27, 41-42).   When asked about his time at McDonald's, plaintiff said that he cooked and cleaned there, that it was supported employment (R. 42-43, 27).   He reported having difficulties with McDonald's supervisor and working as a team, but he had no problem following directions (R. 27, 43).   He admitted to being fired twice from McDonald's, once for arguing with his boss and once for poor attendance; he admitted to threatening another employee (R. 27, 43-46).   While at Monsignor Carr, plaintiff was treated for ADHD until he aged out (R. 27, 46).   He was on medication that helped to calm (R. 27, 46-47) and focus him (R. 47).   Plaintiff testified that he was classified a slow learner, primarily in math (R. 41).

Plaintiff also had polysubstance abuse of marijuana and alcohol (R. 388, 483), but the ALJ concluded that there was no clinical evidence of substance use that caused any work-related limitations (R. 22).

## MEDICAL AND VOCATIONAL EVIDENCE

The ALJ found that plaintiff's impairment or combination of impairments did not meet or medically equal a listed impairment under Social Security regulations, concluding that plaintiff's ADHD did not meet the standards for Listings 12.02, 12.05, or 12.09 (R. 22).   The ALJ concluded that plaintiff's condition did not satisfy "Paragraph B" (or "Paragraph D" under Listing 12.05) criteria (R. 22-23).   The ALJ found that plaintiff had mild restrictions on activities of daily living; mild difficulties in social functioning; moderate difficulties in concentration, persistence, or pace, and had no episodes of decompensation (R. 22-23).   The ALJ also concluded that no "Paragraph C" criteria for these Listings were met (R. 23).

Evaluating "Paragraph A" criteria of Listing 12.05, the ALJ also found that plaintiff did not meet these criteria for dependence on others for care, and an inability to follow directions (R. 23-24).   As for "Paragraph B" criteria for this Listing, plaintiff tested with an IQ score of 65, over the 59 score threshold for this criteria, but under "Paragraph C" plaintiff's IQ score meets this criteria, but he did not have a physical or mental impairment, with the ALJ pointing to plaintiff successfully working part-time for 2½ years with conditions (R. 24, 389-90).

The ALJ found that plaintiff had a residual functional capacity to perform a full range of work under all exertional levels, with non-exertional limitations that he could only have occasional understanding, remembering, and carrying out of complex and detailed tasks (R. 24).

The ALJ did not credit plaintiff and his mother's statements as to the intensity, persistence, and limiting effects of his condition (R. 27).   The ALJ found no evidence of distractibility, hyperactivity, and impulsivity (ADHD-related symptoms) from October 2011 to April 2015 (R. 27).   Plaintiff had "multiple normal mental status examinations in which concentration and attention were described as good or intact" (R. 27-28).

Psychologist Dr. Gregory Fabiano, Ph.D., examined plaintiff on May 28, 2013 (R. 387, 25).   Dr. Fabiano found that plaintiff had "mild to moderate limitations in his ability to maintain attention and concentration (R. 390, 25).   He observed that plaintiff's "attention and concentration [were] good" (R. 388).   Dr. Fabiano also found no evidence of limitations on plaintiff's ability to follow directions (R. 390).   Dr. Fabiano opined that plaintiff would be a good candidate for vocational training and rehabilitation (R. 391; see also R. 395).   The ALJ gave "great weight" to Dr. Fabiano's assessments "as it is consistent with his examination findings" but gave no weight "where it is inconsistent with his examination findings,"

5

specifically the conclusions that plaintiff was mildly to moderately limited in the ability to attend

and concentrate (R. 26, 390).   The ALJ found that the mild to moderate limitation finding was

inconsistent with finding intact attention and concentration at the psychological evaluation

(R. 26, 394) and good attention and concentration at the intelligence evaluation (R. 26, 388).

Dr. Cheryl Butensky, Ph.D., also assessed the plaintiff, finding that he has mild

restrictions in activities of daily living, mild difficulties in maintaining social functioning, and

moderate difficulties maintaining concentration, persistence, and pace (R. 72, 82, 92, 26).   The

ALJ gave Dr. Butensky's assessment "significant weight" (R. 26).

The ALJ posed to the vocational expert hypotheticals of a claimant with plaintiff's

residual functional capacity, age, education, and employment experience.   The expert opined

that such a claimant could return to work in fast food, thus the ALJ found that plaintiff could

return to his past relevant work as a fast food worker (unskilled work, light exertion) with jobs in

the national and local economy (R. 28, 63-64).

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the

plaintiff was not under a disability is supported by substantial evidence.   See 42 U.S.C.

§ 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).   Substantial evidence is defined

as "'more than a mere scintilla.   It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'"   Richardson v. Perales, 402 U.S. 389, 401 (1971)

(quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment.   Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).   Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform."   Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

7

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467.   If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992).   However, it should be noted that the ALJ has an affirmative duty to fully develop the record.  Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that he has done in the past.   20 C.F.R. §§ 404.1520(e) & 416.920(e).   When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work."   See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994).   The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity.  Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, plaintiff claims that the ALJ's determination of his residual functional capacity was not supported by substantial evidence and contains errors of law (Docket No. 9, Pl. Memo. at 15-17).   The errors of law were the ALJ failing to account for all of plaintiff's

8

restrictions and limitations as noted by Drs. Fabiano and Butensky for severe and non-severe impairments (id. at 15-16).   The ALJ did not give reasons why he failed to incorporate Dr. Fabiano's restrictions into the residual functional capacity (id. at 16).   Dr. Fabiano concluded that plaintiff's psychiatric and cognitive problems might significantly interfere with plaintiff's functioning on a daily basis (R. 390).   The ALJ, although giving significant weight to the findings, also failed to incorporate the restrictions found by Dr. Butensky (mild to moderate limitations in his ability to sustain attention and concentration and adapt to changes in work routine; mild restrictions in activities of daily living) (id. at 17; R. 92, 26).   Plaintiff also points out that the ALJ erred in determining that plaintiff does not have impairments that meet Listing 12.05C (Docket No. 9, Pl. Memo. at 18-20) because plaintiff had an IQ score within the Listing range (of 60-70) and a physical or mental impairment—here, ADHD and polysubstance abuse (id. at 19; R. 24).   The ALJ erred in not finding plaintiff's ADHD to be a severe impairment (id.).   Plaintiff attributes his two firings from McDonald's (for insubordination and for violence to coworkers) were due to his ADHD (id.).   Looking at plaintiff's adaptive functioning, he claims deficits from his failure to bathe and change clothes regularly (despite his ability to dress, bathe, and groom himself) (id. at 20).   Plaintiff also cannot manage his own funds (R. 390).

Defendant counters that the ALJ had substantial evidence to support his denial of disability (Docket No. 11, Def. Memo. at 11-16); that the ALJ properly considered plaintiff's condition in determining whether it met Listing 12.05C (id. at 12-16); and substantial evidence supports the ALJ's residual functional capacity determination (id. at 17-23).

I.      Weight for Review Physicians' Opinions

      The ALJ gave Dr. Butensky's assessment "significant weight" (R. 26) but does not apply the limitations noted by the doctor.   Dr. Butensky found that plaintiff had mild or moderate difficulties in activities of daily living, maintaining concentration, persistence and pace.   The ALJ appears to seek more severe difficulties before deeming plaintiff disabled.   The residual functional capacity assessment, however, does not even acknowledge the mild or moderate restrictions found for plaintiff.

      As for Dr. Fabiano, he acknowledged plaintiff's longstanding ADHD problem (R. 388). Dr. Fabiano observed plaintiff's attention and concentration being good, concluding, "the results are considered to be a valid and reliable estimate of current functioning" (R. 388).   He found that there was no evidence of limitations in his ability to follow and understand simple instructions, relate adequately with others, or appropriately deal with stress, and had mild or moderate limitations in his ability to maintain attention and concentration (R. 390).   Dr. Fabiano found that plaintiff's condition "may significantly interfere with the claimant's ability to function on a daily basis" (R. 390).   Dr. Fabiano also noted that plaintiff had mild or moderate limitations in maintaining a regular schedule.   Dr. Fabiano stated plaintiff could dress, bathe, and groom himself but his mother reported that plaintiff did not always engage in these activities (R. 390). Plaintiff's mother handled money for him and Dr. Fabiano opined that plaintiff was not able to manage his funds due to his level of cognitive abilities and his reported difficulty in this daily life function (R. 390, 391).

      While Dr. Fabiano's opinion appears inconsistent or favoring plaintiff's view, he noted at worst moderate limitations in plaintiff's attention and concentration.   The ALJ did not err in

10

parsing this opinion for portions supported by the rest of the medical record.   Dr. Fabiano concluded that plaintiff was a "good candidate for vocational training and rehabilitation" (R. 391) despite his limitations.   Plaintiff's employment history at McDonald's and his two firings are consistent with Dr. Fabiano's opinion in having difficulty in maintaining a regular schedule, leading to the termination for too many call-ins.

Plaintiff argues that his moderate limitations in three areas make him work precluded, asserting that the contrary precedent cited by defendant is distinguishable (Docket No. 12, Pl. Reply Memo. at 6-7).   Plaintiff has the burden of showing his disability at the step determining whether his impairment meets listed standards, see Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (Docket No. 11, Def. Memo. at 13).   Defendant's precedent (id. at 22-23) is distinguishable, Listings 12.02, 12.05, and 12.09 require marked restrictions on activities of daily living, maintaining social functioning, or maintaining concentration, persistence, or pace.   These regulations do not equate multiple criteria at the less severe level of moderate to add up to marked restrictions to be a severe impairment.

The mixed result from Dr. Fabiano is reflected in the mild to moderate limitations he found.   In addition, it is consistent with Dr. Butensky's assessment that plaintiff has mild or moderate difficulties.   For a disability, the condition has to be more severe than moderate limitations.   As a result, the ALJ properly found that plaintiff has not shown that he met the limitation and, hence, was **not disabled**.

II.    Listing 12.05C

This Listing has been amended (see Docket No. 9, Pl. Memo. at 18 n.6; Docket No. 11, Def. Memo. at 13 n.5), but the parties agree to apply the standard as of the date of the ALJ's

decision (id.).    Again, plaintiff has the burden of establishing that he meets a Listing, Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (Docket No. 11, Def. Memo. at 13).    For Listing 12.05C, plaintiff must establish (1) that he has the requisite IQ score and (2) physical or mental impairment.    Plaintiff seems to argue that he also meets Listing 12.05A criteria, which is mental incapacity evidenced by a dependence upon others for personal needs, pointing to his inability to bathe, dress himself, or handle his own money.    An adaptive deficit includes the inability of the claimant to dress, bathe, manage money, communicate effectively, do simple math, or take care of personal needs, see Orton v. Astrue, No. 7:11CV630FJS/ATB, 2013 WL 3328025, at *10 (N.D.N.Y. July 2, 2013) (Docket No. 11, Def. Memo. at 13-14).

While all concede that plaintiff met the IQ score, the issue is whether he has a physical or mental impairment.    Plaintiff identifies two conditions—ADHD and adaptive function deficits (Docket No. 9, Pl. Memo. at 19-20)—as qualifying impairments.    The ALJ, however, discounted plaintiff's ADHD because plaintiff was not taking medication for the condition, the record did not show symptoms (R. 22) and that it did not impose work-related limitations (R. 24).    Despite plaintiff's mother wanting plaintiff to get back on his ADHD medication, the ALJ found that plaintiff's inattention to chores was behavioral rather than medical (R. 22).

Plaintiff lost the jobs he had due to insubordination, absenteeism, and fighting with coworkers (Docket No. 9, Pl. Memo. at 19; R. 479-80).    The last item is consistent with his behavior at home when he was not taking the ADHD medication.    Dr. Fabiano opined that plaintiff could work with vocational training and rehabilitation (R. 391) despite plaintiff's diagnosed ADHD.

As for his adaptive functioning deficits, plaintiff's infrequent bathing and changing clothes appears to be behavioral rather than medical; again, Dr. Fabiano found that plaintiff could bathe and dress but noted his mother saying that he chooses not to do so.   Plaintiff has deficits in handling funds.   As he explains in Reply (Docket No. 12, Pl. Reply at 2), plaintiff was able to work at McDonald's because of the support of his mother; plaintiff was employed there as through a Supported Employment Program (R. 43; Docket No. 9, Pl. Memo. at 3).   This record does not have deficits in other areas for adaptive functioning, such as communicating effectively, taking care of personal needs, or mathematic computations.   There is a sufficient record for the ALJ to conclude properly that plaintiff did not have sufficient adaptive functioning deficits.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **AFFIRMED**.   Defendant's motion for judgment on the pleadings (Docket No. 11) should be **GRANTED** and plaintiff's motion for similar relief in his favor (Docket No. 9) should be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report &**

Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72(b).

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72(b), "[w]ritten objections to proposed findings of fact and recommendations for disposition submitted by a Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.**

So Ordered.

_s/Hugh B. Scott_
_____
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
February 7, 2018