UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

AUBREY BRIAN REDDING,

      Plaintiff,

  v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

      Defendant.

16-CV-848
DECISION AND ORDER

---

On October 24, 2016, the plaintiff, Aubrey Brian Redding, brought this action under the Social Security Act (the "Act"). He seeks review of the determination by the Acting Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On March 22, 2017, this Court referred this case to United States Magistrate Judge Hugh B. Scott. Docket Item 8. On May 19, 2017, Redding moved for judgment on the pleadings, Docket Item 9, and on July 18, 2017, the Commissioner responded and cross moved for judgment on the pleadings, Docket Item 13.

On February 7, 2018, Judge Scott issued a Report and Recommendation ("R&R") finding that Redding's motion for judgment on the pleadings should be denied and that the Commissioner's cross motion for judgment on the pleadings should be granted. Docket Item 13. On February 21, 2018, Redding objected to the R&R. Docket Item 14. The Commissioner filed a response to Redding's objections on February 26, 2018. Docket Item 16. This Court heard argument on April 17, 2018, and reserved decision. Docket Items 18, 21. For the reasons stated below, this Court

adopts the R&R, denies Redding's motion, and grants the Commissioner's cross motion.

## BACKGROUND

### I. PROCEDURAL HISTORY

On February 1, 2013, Redding applied for Social Security Disability Insurance Benefits, Supplemental Security Income, and Child's Insurance Benefits. Tr. 167-81. He claimed that he had been disabled since February 1, 1999, because of a mental impairment—that he is "learning disabled." Tr. 221. He said that he was taking medication to treat his attention deficit hyperactivity disorder ("ADHD"). Tr. 223. On June 21, 2013, Redding received notice that his application was denied because he was not disabled under the Act. Tr. 101-10.

Redding requested a hearing before an administrative law judge ("ALJ"), Tr. 110-20, which was held on March 11, 2015, before ALJ Timothy M. McGuan, Tr. 36. The ALJ then issued a decision on April 22, 2015, confirming that Redding was not disabled under the Act. Tr. 29. Redding's appeal was denied, and the decision became final on August 26, 2016. Tr. 2. On October 24, 2016, Redding filed this action, asking this Court to review the ALJ's decision. Docket Item 1.

### II. RELEVANT MEDICAL EVIDENCE

Although this Court adopts Judge Scott's thorough recitation of the evidence, it provides the following summary of the medical evidence most relevant to Redding's objections.

On May 28, 2013, Gregory Fabiano, Ph.D., saw Redding for a consultative intelligence examination. Tr. 387. Dr. Fabiano found that Redding did "not appear to have any evidence of limitations in his ability to follow and understand simple directions and instructions, perform simple tasks independently, make appropriate decisions, relate adequately with others, or appropriately deal with stress." Tr. 390. Dr. Fabiano noted, however, that Redding had "mild to moderate limitations" in his ability to focus, maintain a schedule, and perform complex tasks. *Id*. To that end, Dr. Fabiano concluded that Redding's cognitive deficits may "significantly interfere with [Redding's] ability to function on a daily basis." *Id*.

Dr. Fabiano also observed that: (1) Redding denied any symptoms of depression, anxiety, panic, or mania; (2) Redding can dress, bathe, and groom himself; (3) Redding can take public transportation; and (4) Redding can recall and understand instructions while responding in a deliberate, orderly, and self-correcting manner. Tr. 387-88, 390. And Dr. Fabiano listed Redding as a good candidate for vocational training and rehabilitation. Tr. 391.

Cheryl Butensky, Ph.D., reviewed Dr. Fabiano's findings. Tr. 72. Dr. Butensky noted that Redding has a "moderate intellectual impairment," a "mild psychiatric impairment," and "mild to moderate limitations in [Redding's] ability to sustain attention[,] concentration[,] and adapt to changes in a routine work setting." *Id*. At the same time, Dr. Butensky found that Redding "retains the capacity to perform simple job tasks" as well as to "interact appropriately with coworkers and supervisors." *Id*.

The record also includes testimony from Rachel Duchon, a vocational expert. Tr. 63. In her testimony, Ms. Duchon considered a hypothetical person with Redding's

3

education level who had no exertional limitations and could only occasionally understand, remember, and carry out complex and detailed tasks. Ms. Duchon testified that this hypothetical person would be able to perform the job of a fast food worker—the same position that Redding once held. Tr. 63-64. The record also suggests several other jobs available in the national economy that Redding could pursue.

Finally, the record includes exhibits from Deborah Cornell, M.D. *See, e.g.*, Tr. 421. Dr. Cornell is Redding's treating physician who, in March 2014, did not continue Redding's prescription for Concerta—used to treat ADHD—because Redding no longer had to complete tasks that required his concentration. *See id.*

## III. THE ALJ'S DECISION

In denying Redding's application, the ALJ evaluated Redding's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. If so, the claimant is not disabled. If not, the ALJ proceeds to step two.

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. Id. If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations,

4

the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any of the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If a claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, the ALJ found that Redding was not "engaged in substantial gainful activity" under step one. Tr. 22. At step two, the ALJ determined that Redding suffers from an intellectual disability under 20 C.F.R. 404.1520(c) that amounted to a severe impairment. *Id.* And at step three, the ALJ found that the claimant's intellectual

5

disability, ADHD, did not meet—or medically equal—the criteria of three listings in the regulations: 12.02, 12.05, or 12.09. *Id.*

The ALJ based this determination on Redding's intelligence and psychiatric evaluations by Dr. Fabiano. Dr. Fabiano had noted that Redding could dress, bathe, and groom himself. Tr. 22-23. Dr. Fabiano found that Redding has friends and "okay" relationships with his family members. Tr. 23. Dr. Fabiano also noted that at the psychiatric evaluation, Redding's attention and concentration were intact, and he completed counting tasks and simple calculations. *Id.*

The ALJ paid specific attention to Listing 12.05,[1] finding that Redding did not meet the criteria for that listing. Tr. 24. Because Dr. Fabiano found that Redding could bathe, dress, and groom himself, the ALJ concluded that Redding was not dependent on others for his personal needs. *Id.* The ALJ also noted that Redding's IQ was above 59. *Id.* And for those same reasons, the ALJ determined that Redding might possibly meet only Subsection C of Listing 12.05 because the other subsections required that the claimant be dependent on others or have an IQ of 59 or lower. See 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

---

[1] The parties agree that former Listing 12.05—which contained three subsections—is the correct listing to consider because it was the listing at the time of the ALJ's decision. Docket Items 9-1 at 18, 11-1 at 13. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66,138, 66,138 n.1 (Sept. 26, 2016) ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions"). The Second Circuit has suggested that a listing in effect at the time of the application, not at the time of the ALJ decision may be the appropriate listing to consider. *See Bushey v. Berryhill*, 739 F. App'x 668, 672 (2d Cir. 2018) (analyzing claim of error "[u]nder the version of Listing 12.05 in effect at the time of [claimant's] application"). In this case, the 12.05(C) included the same requirements at the time of Redding's application and the time of the ALJ's decision.

6

But the ALJ found that Redding did not meet the criteria of Subsection C either. This listing requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* (emphasis added). Although Redding has an IQ score between 60 and 70, the ALJ determined that Redding's ADHD did not constitute a mental impairment imposing an additional and significant work-related limitation of function. Tr. 24. In particular, the ALJ noted that Redding had been able to maintain part-time employment for two-and-a-half years despite his ADHD. *Id.*

In determining Redding's RFC, the ALJ also found that Redding is able to perform a full range of work—at all exertional levels—but has occasional trouble understanding, remembering, and carrying out detailed and complex tasks. *Id.* In arriving at this conclusion, the ALJ gave great weight to some of Dr. Fabiano's assessments. Tr. 26. But the ALJ did not give weight to Dr. Fabiano's assessments that were "inconsistent with his examination findings." *Id.* The ALJ found an inconsistency in Dr. Fabiano's assessment, for example, because Dr. Fabiano concluded that Redding was "mildly to moderately limited in the ability to attend and concentrate" while also noting that Redding's attention and concentration were intact at both the psychological and intelligence evaluations. *Id.*

The ALJ also gave significant weight to Dr. Butensky's review of Dr. Fabiano's findings. *Id.* The ALJ credited Dr. Butensky's assessment that Redding "retained the capacity to perform simple job tasks and interact appropriately with co-workers and supervisors" while having "mild restrictions in activities of daily living, mild difficulties

7

maintaining social functioning[,] and moderate difficulties maintaining concentration, persistence[,] and pace with no episodes of decompensation of extended duration." *Id.*

Finally, at step four, the ALJ determined that Redding was capable of returning to work as a fast-food worker. Tr. 28. The ALJ based his determination on the testimony of Ms. Duchon, the vocational expert, who opined that a hypothetical claimant with the same issues as Redding would be able to hold such employment. *Id.* In light of these determinations, the ALJ did not find Redding disabled under the Act. Tr. 28-29.

## LEGAL STANDARDS

### I. DISTRICT COURT REVIEW

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). A district court must conduct a de novo review of those portions of a magistrate judge's recommendation to which objection is made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Because Redding has objected here, this Court reviews de novo the portions of the R&R to which Redding objected.

When evaluating a decision by the Social Security Administration ("SSA"), district courts have a narrow scope of review—that is, determining whether the SSA's conclusions were supported by substantial evidence in the record and whether the SSA applied the appropriate legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Indeed, a district court must accept the findings of fact in the final decision as long as they are supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*,

569 F.3d 108, 112 (2d Cir. 2009) (quoting *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008).  In other words, a district court does not review a disability determination de novo.  *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

## **DISCUSSION**

Redding challenges Judge Scott's R&R for two reasons.  First, Redding asserts that the ALJ's RFC finding included errors and was not supported by substantial evidence; he argues that Judge Scott erred in finding otherwise.  Docket Item 14 at 3-8.  Second, Redding argues that Judge Scott erred in accepting the ALJ's conclusion that Redding's impairments do not meet or equal a qualifying condition under Listing 12.05(C).  *Id.* at 8.

More specifically, Redding argues that substantial evidence does not support the ALJ's decision to accept only certain findings—and not all findings—by Dr. Fabiano and Dr. Butensky.  *Id.* at 5-6.  Redding claims the ALJ failed to provide reasons for rejecting portions of the doctors' conclusions.  *Id.* at 7.  Redding also argues that the ALJ did not explain why he did not credit the determination that Redding's mental impairments "may significantly interfere with the claimant's ability to function on a daily basis."  *Id.* at 4; Tr. 390.  And Redding claims that his mental impairment meets or equals a qualifying condition under Listing 12.05(C).  Docket Item 14 at 8.

### A.  The RFC Determination

Redding contends that the ALJ erred as a matter of law in failing to incorporate most of his "restrictions and limitations as determined by Dr. Fabiano and Dr. Butensky despite giving those opinions 'great weight' and 'significant weight' respectively."  Id. at 3.

9

While there is "no absolute bar to [an ALJ] crediting only portions of medical source opinions," *Younes v. Colvin*, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015), "if the ALJ's RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (quotations and citations omitted). Specifically, "an ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject the remaining portions." *Raymer v. Colvin*, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) (quotations and citations omitted). Here, the ALJ sufficiently explained the incongruous portions of the doctors' medical opinions and why the ALJ credited only portions of each opinion in the RFC. Therefore, Judge Scott did not err in his review of the ALJ's conclusions.

The ALJ relied primarily on objective evidence from Dr. Fabiano's examinations. Tr. 25-26. The ALJ explained that one of Dr. Fabiano's conclusions did not deserve weight—that Redding was "mildly to moderately limited in the ability to attend and concentrate," Tr. 26—because it was "inconsistent with his findings of intact attention and concentration at the psychological evaluation and concentration at the intelligence evaluation." *Id.* But contrary to Redding's suggestions, the ALJ's decision gave Dr. Fabiano's other medical opinions "great weight insofar as [they are] consistent with his examination findings." *Id.*

The ALJ acknowledged that the results of the examinations indicated deficient cognitive functioning and limitations in recent and remote memory skills. Tr. 25-26. Contrary to Redding's assertions, the ALJ did not conclude that Redding's mental impairments had no impact on his life, nor did the ALJ reject Dr. Fabiano's opinion that

10

Redding's impairments "may significantly interfere with [his] ability to function," Tr. 390; in fact, the ALJ expressly acknowledged that Redding's "cognitive defects are significant," Tr. 28. Instead, the ALJ simply concluded that "they are not so severe as to preclude all work activity." *Id.* And after reviewing the record and the ALJ's decision, this Court agrees with Judge Scott that the ALJ did not err and incorporated Redding's restrictions and limitations as determined by Dr. Fabiano (except as noted above) in reaching his decision. *Cf. Pope v. Barnhart*, 57 F. App'x 897, 899 (2d Cir. 2003) (ALJ "does not err by failing to explicitly mention all of [the] evidence"). Therefore, the ALJ did not err in analyzing Dr. Fabiano's opinion evidence as he determined Redding's RFC.

The same is true regarding the ALJ's consideration of Dr. Butensky's opinions. Redding argues that despite giving Dr. Butensky's opinions significant weight, the ALJ failed to appreciate many of Redding's moderate restrictions and limitations that Dr. Butensky described. Docket Item 14 at 5.[2] But the ALJ explained that "Dr. Butensky found that the claimant had mild restrictions in activities of daily living, mild difficulties maintaining social functioning[,] and moderate difficulties maintaining concentration, persistence[,] and pace," and the ALJ gave significant weight to those conclusions. Tr. 26. Indeed, the ALJ found, consistent with Dr. Butensky's findings, that Redding's

---

[2] Specifically, Redding points to Dr. Butensky's findings that he "had moderate difficulties in maintaining concentration, persistence[,] or pace" and that he "had moderate limitations in the following: maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance[,] and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others." Docket Item 14 at 5 (citing Tr. 70-75, 81-85, and 91-95).

11

"cognitive defects are significant." Tr. 28. But the other evidence cited by the ALJ—including, but not limited to, Redding's treating source's opinion that many of Redding's impairments were behavioral and not related to his ADHD impairment, Tr. 25; his ability to complete high school, Tr. 28; his prior work notwithstanding his challenges, *id.*; his ability to play video games and basketball, *id.*; and his testimony that he uses a computer to look for work, Tr. 27-28—indeed constitutes "such relevant evidence as a reasonable mind might accept as adequate to support" the ALJ's determination. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Stated another way and more simply, this Court agrees with Judge Scott that substantial evidence supports the ALJ's determination that Redding's significant cognitive defects "are not so severe as to preclude all work activity." Tr. 28.

### B. The ALJ's 12.05(C) Finding

Redding also argues that the ALJ erred in determining that he was not *per se* disabled pursuant to Appendix 1 of the relevant SSA regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Part A, § 12.00. Under Listing 12.05(C), Redding is *per se* intellectually disabled if he has an IQ between 60 and 70 and demonstrates a physical or other mental impairment imposing an additional and significant work-related limitation of function. *See Bushey v. Berryhill*, 739 F. App'x 668, 672 (2d Cir. 2018); *Talavera v. Astrue*, 697 F.3d 145, 151-52 (2d Cir. 2012). Neither party disputes that Redding's IQ score qualifies for Listing 12.05(C), nor does either party dispute that Redding has ADHD. In light of those qualifications, Redding argues that his ADHD necessarily is an "other mental impairment imposing an additional and significant work-related limitation

12

of function," 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Part A, § 12.05(C), and that the ALJ erred in finding otherwise.  Docket Item 14 at 8.

In his decision, the ALJ determined that Redding's "ADHD . . . do[es] not impose additional and significant work-related limitations."  Tr. 24.  In support of that conclusion, he observed that Redding had "maintained part-time employment for [two-an-a-half] years despite the presence of [ADHD]."  *Id.*  As part of Redding's RFC evaluation the ALJ also noted that Redding's ADHD had been treated with medication and that the only reason his treating physician did not continue Redding's prescription for his ADHD medication in March 2014 was that he was no longer working or performing tasks that required concentration.  Tr. 25.  What is more, although Dr. Fabiano opined that Redding's "psychiatric and cognitive problems . . . may significantly interfere with [his] ability to function on a daily basis," *see* Tr. 394-95, Dr. Fabiano also found that in spite of Redding's limitations he "would be a good candidate for vocational training and rehabilitation."  Tr. 395.  For these reasons, the ALJ did not err in concluding that Redding's impairment does not meet the listing in 12.05(C).

## **CONCLUSION**

Judge Scott did not err in finding that the ALJ's decision was neither contrary to the substantial evidence in the record nor the result of any legal error.  Therefore, and for the reasons stated above, this Court accepts Judge Scott's R&R, Docket Item 13; Redding's motion for judgment on the pleadings, Docket Item 9, is DENIED; the

Commissioner's cross motion for judgment on the pleadings, Docket Item 11, is GRANTED; and the Clerk of Court shall close the file.

SO ORDERED.

Dated: January 2, 2019
Buffalo, New York

    */s Lawrence J. Vilardo*
Lawrence J. Vilardo
United States District Judge